IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RHONDA KAYE HUTSON,
    Petitioner,

v.                                        Case No. 4:24cv464/RH/MAL

KERRI R. PISTRO,
WARDEN FCI TALLAHASSEE,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

This case is before me on Petitioner Rhonda Kay Hutson's amended petition for writ of habeas corpus under § 2241, in which she contends she is entitled to immediate placement into a residential reentry center ("RRC") or home confinement due to sentencing credits she earned under the First Step Act ("FSA"). ECF No. 6. The matter has been briefed several times.[1] After review of the record and relevant law, I recommend that the amended petition be denied because Hutson has not established either a right to or a liberty interest in prerelease custody under the FSA

---

[1] In addition to the Warden's response (ECF No. 9), Petitioner's reply and supplemental reply (ECF Nos. 11, 13), the Warden filed myriad supplemental responses in compliance with Court orders (ECF Nos. 14, 16, 17, 18, 22), to which Petitioner replied (ECF Nos. 23, 24). The Court appointed counsel for Petitioner (ECF No. 19), and counsel filed a reply (ECF No. 25). The Court held a telephonic status conference on June 6, 2025, following which the parties were directed to confer and provide additional briefing, which they have done. ECF Nos. 29, 31, 32, 33).

and she has not shown the Bureau of Prisons ("BOP") abused its discretion with respect to her transfer to prerelease custody.

## I. BACKGROUND

On September 22, 2010, Hutson was sentenced to a 300-month term of imprisonment followed by a 10-year term of supervised release after pleading guilty to conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, oxycontin and its equivalents in the Western District of Virginia. W.D. Va. Case 1:10cr2-JPJ-20. ECF No. 1271. She had previously been convicted of two felony drug offenses and therefore was sentenced as a career offender. *See id.,* ECF No. 2021 at 1, 2, 6. In June of 2023, the court reduced Hutson's sentence to a total term of 241 months under 18 U.S.C. § 3582(c)(1)(A). *Id*. Hutson is subject to a pending detainer from the Sullivan County Sheriff's Office in Tennessee which was lodged on September 16, 2020. ECF No. 9 at 3.

Hutson is housed at FCI Tallahassee with a projected release date of March 22, 2026. *See* https://www.bop.gov/inmateloc/. She is currently enrolled in Female Integrated Treatment ("FIT"), which includes a component of the Residential Drug Abuse Program ("RDAP").[2] ECF No. 31-1 at 1. Her projected competition date is August 7, 2025. ECF No. 31-1 at 1.

---

[2] See BOP Program Statement 5240.01.

Hutson claims she is entitled to immediate placement in prerelease custody under the First Step Act (FSA). ECF No. 6 at 7. She explains she has earned 365 days of FSA time credits to shorten her sentence, plus more than 625 days toward prerelease custody. *Id.* at 3. Hutson also maintains that she meets the criteria of 18 U.S.C. § 3624(g)(1)(A), (B) and (D),[3] and she should have been released to prerelease custody as of August 15, 2024. ECF No. 6 at 3, 9-10. Ms. Hutson states that she "has no need and no desire to remain in prison beyond the release date she has earned under the law." ECF No. 23 at 6, n. 5.

## II.    DISCUSSION

The final resolution of this case rests on the discretion retained by the BOP to determine the timing and location of a prisoner's placement in prerelease custody under the applicable statutes. During the course of the case, however, other issues were raised regarding exhaustion of administrative remedies and the effect of a Tennessee detainer. These issues will be addressed before explaining the BOP's discretion regarding prerelease custody under the FSA.

---

[3] Hutson has earned time credits in an amount greater than the remainder of her imposed term of imprisonment. 18 U.S.C. § 3632(g)(1)(A). She has maintained a minimum or low recidivism risk during her term of imprisonment. 18 U.S.C. § 3632(g)(1)(B). And she has been determined to be a minimum or low risk to recidivate pursuant to the last 2 reassessments. 18 U.S.C. § 3632(g)(1)(D).

A. **Exhaustion of Administrative Remedies**

The Warden originally raised Hutson's failure to exhaust her administrative remedies as a defense, noting Hutson had withdrawn her administrative remedy at the institutional level. ECF No. 9. In her reply, Hutson explained she withdrew her request for administrative remedy ("AR") under duress and coercion after her Unit Manager told her if she did not withdraw the AR the Unit Manager would have to spend time responding to the AR and would be too busy to do Hutson's RRC paperwork. ECF No. 11 at 3, 4; ECF No. 11-1 at 2. The Warden subsequently abandoned and waived the defense of exhaustion. ECF No. 22 at 7.

B. **Effect of the Tennessee Detainer**

As noted above, a detainer was lodged against Hutson in the State of Tennessee on September 16, 2020. ECF 9 at 3. The presence of the detainer was a focal point earlier in the case. In the response to the amended petition, the Warden stated that Hutson's Unit Team was working on getting the Tennessee detainer resolved so Hutson could be placed in an RRC. ECF No. 9 at 3, 9. Implicit in this statement is the suggestion that Hutson could not be placed in an RRC if the detainer remained in place. On February 26, 2025, the Court directed the Warden to file a supplemental response advising the Court of the status of the Unit Team's efforts to

resolve the detainer, and the effect of the detainer on Hutson's placement in an RRC. ECF No. 12 at 2.

Hutson was the first to respond to the Court's order. ECF No. 13. She argued that the detainer has no effect on her placement in an RRC, citing the BOP's February 6, 2023, Change Notice to Program Statement 5410.01, that struck out language indicating that inmates with unresolved charges or detainers were unable to apply FSA time credits. ECF No. 13 at 1. Shortly thereafter, a posting on the BOP's Trulincs system advised that inmates are eligible to apply FSA time credits toward prerelease custody regardless of their detainer status. *Id.* at 2, 3. The Trulincs post warned, however, that inmates with unresolved pending charges "are at significantly higher risk to be arrested due to active warrants, and an arrest will result in a technical escape for you and an interruption of your federal sentence as the Bureau will have lost primary jurisdiction." *Id.* at 3 (bold typeface in original omitted). Hutson further cited to a November 20, 2023, "First Step Act Admission and Orientation (A&O) Addendum" that was posted on the Trulincs system and is included in all A&O handbooks given to inmates. *Id.* at 2. In response to the question as to how unresolved pending charges and detainers impact the award of FSA credit, this addendum states "As long as you are eligible to earn time credits, an unresolved pending charge and/or detainer has no impact." *Id.* at 4.

In the Warden's supplemental response filed pursuant to the Court's order, the Warden explained that the BOP sent a letter to the Governor of the State of Tennessee seeking his position on whether the State of Tennessee would lift the detainer for Hutson's placement with an RRC. ECF No. 14 at 1. If the Governor agreed to lift the detainer or failed to respond within 30 days, the RRC/HC referral packet would be submitted first to the Warden for approval and then to the assigned Residential Reentry Manager (RRM) for review. *Id.* at 2. The Warden stated, "If Tennessee has not lifted the detainer, the RRM has the discretion to deny the RRC placement of Hutson." *Id.*

On April 18, 2025, the Court issued a second order requiring the Warden to provide an update on the status of Hutson's detainer. ECF No. 15 at 2-3. The Warden reported that the State of Tennessee did not respond to the BOP's communication regarding Hutson's detainer, and the Warden, after reviewing an RRC/HC referral packet, approved Hutson's transfer to an RRC. ECF No. 16. The response did not address the effect of the detainer on Hutson's placement in prerelease custody, or the documents cited by Hutson. Hutson was approved for RRC placement with a transfer date of August 7, 2025. ECF No. 18.

The Warden offered no reason, other than the detainer, why Hutson had not already been placed in prerelease custody, or the reason for the delay in transfer

when the BOP's own documents (ECF No. 17-1 at 3) suggested Hutson could have been placed in prerelease custody as early as April 21, 2024.[4]

The Warden later asserted the BOP had never taken the position that Hutson was ineligible for lack of time credits or ineligible due to the detainer. ECF No. 22 at 1-2. Rather, the Unit Team believed that removing the detainer would make it easier to place Hutson in an RRC, and their strategy was to have the detainer removed or resolved before placement, because inmates with state detainers do not have to be accepted into RRCs. *Id.* at 2-3.

At a June 6, 2025, status conference, this Court was advised that Hutson has been approved for home confinement, whereas previously she was approved for placement in an RRC. At this juncture, the detainer is still in place but is not impeding Hutson's projected placement in home confinement on August 7, 2025, assuming Hutson successfully completes the FIT program.

C. **The FSA did not remove the BOP's discretion to determine the timing and location of a prisoner's placement in prerelease custody**

"The decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). Understandably, Congress

---

[4] Hutson's earned FTC were not equal to the remainder of her imposed term of imprisonment until August of 2024. At that point, Hutson contends, because she remained incarcerated and continued to accrue FSA credits, her pre-release date has moved backwards, resulting in a current prerelease custody date of April 21, 2024. *See* ECF No. 25 at 2, n. 2.

delegated to the BOP the authority to designate the place of a prisoner's custody and enumerated five factors to consider. 18 U.S.C. § 3621(b).[5] The options for custody expand outside of normal prison facilities when a prisoner is nearing the end of his or her sentence, allowing the BOP to place a prisoner in prerelease custody "under conditions that will afford that prisoner a reasonable opportunity to adjust and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). Generally, a prisoner is eligible to spend up to 12 months in prerelease custody at an RRC prior to the end of sentence. *Id.* A prisoner is also eligible for a period of home confinement not to exceed "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2).

Prerelease custody determinations, like other custody determinations, are placement decisions committed to the discretion of the BOP. *See* 18 U.S.C. § 3624(c)(4) ("Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621."); 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of the law, a designation of a place

---

[5] The statutorily identified factors to consider are:
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence… and
    (5) any pertinent policy statement issued by the Sentencing Commission
18 U.S.C. § 3621(b).

of imprisonment under this subsection is not reviewable by any court."). Accordingly, a court generally does not have the authority to direct the BOP to place a prisoner in prerelease custody. *See Sills v. FCI Talladega Warden*, No. 22-12656, 2023 WL 1775725, at *3 (11th Cir. Feb. 6, 2023) (court lacked the authority to order the BOP to place prisoner in home confinement); *Touizier v. U.S. Att'y Gen.*, No. 21-10761, 2021 WL 3829618, at *2 (11th Cir. Aug. 27, 2021) (same). Furthermore, there is generally no protected liberty interest in prerelease custody. *See Sills*, at *3 (acknowledging Sills had no protected liberty interest in home confinement and thus was "not entitled to due process protections in relation to that decision.").

The FSA built upon this existing structure by creating a risk and needs assessment system whereby prisoners could earn incentives, including time credits to be applied toward placement in prerelease custody and toward early placement on supervised release, for successful participation in evidence-based recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(4); 18 U.S.C. § 3624(g). To this end, Congress expanded the time frame for release and prerelease custody by exempting FSA time credits from the time limits in subsections (b) and (c) of § 3624. 18 U.S.C. § 3624(g)(10).

Subsection (b) limited early release to no more than "54 days for each year of the prisoner's sentence imposed by the court." 18 U.S.C. § 3624(b). The FSA

expanded on this by authorizing an additional 12 months of time credits to be applied toward early release from prison toward a term of supervised release. 18 U.S.C. § 3624(g)(3). Subsection (c) limited placement in home confinement to 6 months and limited placement in an RRC to 12 months. 18 U.S.C. § 3624(c)(1) and (2). The FSA expanded on this by directing time credits to "be applied toward time in prerelease custody" without regard to the limit. § 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g)(10).

In making these changes through the FSA, Congress made clear that the BOP retained control over placement decisions by adding the following provision to the end of 18 U.S.C. § 3621(b): "Notwithstanding any other provision of law, the designation of a place of imprisonment under this subsection is not reviewable by any court." First Step Act of 2018, PL 115-391, December 21, 2018, 132 Stat 5194. It appears, therefore, that under the FSA "[t]he BOP's decision where—and thus when—to transfer a prisoner to prerelease custody remains subject to the same array of considerations that Congress set forth in § 3621(b)." *Crowe et al. v. Federal Bureau of Prisons, et al.*, No. 24-cv-3582 (APM), 2025 WL 1635392, at *23 (D. D.C. June 9, 2025).

Nevertheless, Hutson asserts that this Court should order her immediate placement in prerelease custody because "the FSA permits *no* delay in transferring

an inmate to prerelease custody by their FSA prerelease date." ECF No. 32 at 3 (italics in original). Hutson contends Congress created a liberty interest in enacting the FSA, and she relies on section 3632(d)(4)(C) for the proposition that application of *all* FSA time credits is mandatory. *Id.* at 4. This section provides:

> *Time credits earned* under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities *shall be applied toward time in prerelease custody or supervised release*. The Director of the Bureau of Prisons *shall transfer* eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (italics supplied).

While it is true this subsection uses mandatory language directing that the BOP "shall" apply FSA time credits "toward time in prerelease custody or supervised release" it does not require that *all* time credits earned be applied. Nor does it require the BOP to transfer prisoners into prerelease custody or supervised release *immediately* upon becoming eligible. In the greater context of the BOP's discretion in designating the place of confinement, these provisions appear to provide directions to the BOP about where FSA time credits can be applied, i.e. "toward time in prerelease custody or supervised release," and allows the BOP authority to apply credit toward such transfers.[6] The subsection does not confer an immediate right to transfer claimed by Hutson.

---

[6] This directional purpose is important because arguments have been made that the FSA authorized

One reason for this conclusion is the FSA expressly states, as previously noted: "Notwithstanding any other provision of law, the designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b), First Step Act of 2018, PL 115-391, December 21, 2018, 132 Stat 5194. The lack of authority for judicial review of discretionary placement decisions undercuts Hutson's claim that the FSA created a liberty interest in immediate application of all FSA credits on becoming eligible for prerelease custody. *See Sultenfuss v. Snow,* 35 F.3d 1494, 1501 (11th Cir. 1994) (substantial discretion reserved to the parole board in applying statutory factors weigh against recognition of a statutorily created liberty interest).

Second, prerelease custody is tied to a *place* of imprisonment by § 3624(c)(4) and § 3621(b). The general prerelease custody provision, as previously noted, expressly provides: "Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4). This means prerelease custody decisions are subject to the five-factor

---

time credits to be applied to reduce a term of supervised release (as opposed to early placement on supervised release). In an unpublished opinion, the Eleventh Circuit Court of Appeals noted that the second sentence in 18 U.S.C. § 3632 ("The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."), "clearly indicates that Congress meant that the time credits are to be used to reduce incarceration time [in prison facilities] so as to accelerate the beginning of prerelease custody or supervised release" and not to shorten a term of supervised release. *Guerriero v. Miami RRM*, No. 24-10337, 2024 WL 2017730, at *2 (11th Cir. May 7, 2024).

review process by the BOP in § 3621, which includes consideration of " (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristic of the prisoner; (4) any statement by the court that imposed the sentence… and (5) any pertinent policy statement issued by the Sentencing Commission …." 18 U.S.C. § 3621(b)(1)-(5).

Under Hutson's reading, "[t]he FSA strips the BOP of discretion" in making a transfer decision in accordance with these factors. ECF No. 32 at 7. Hutson insists that the standard factors considered for prerelease custody in § 3621 "are far afield from the decision that Congress made in the FSA regarding the timing and prerequisites to be transferred to prerelease custody." *Id.* at 8. Accepting Hutson's argument means that transfer to prerelease custody immediately upon eligibility is a superseding feature of the FSA, which requires the BOP to set aside common sense placement factors included in § 3621, such as the "resources of the facility completed" or "the history and characteristics of the prisoner" (which includes things like "the prisoner's mental and medical health needs," "faith-based needs," "security concerns," and the place of "the prisoner's primary residence"), 18 U.S.C. § 3621(b), to facilitate immediate transfer of a prisoner out of a normal prison facility and into some form of prerelease custody.

But Hutson's position is not supported by the language she relies on in § 3632(d)(4)(C) because "*[w]hether* to transfer a prisoner necessarily depends on where the prisoner might appropriately be placed." *Crowe*, 2025 WL 1635392, at *2. Immediate transfer to prerelease custody, regardless of the appropriateness of the specific placement, is incompatible with the general purposes of prerelease custody, which is to "afford [a] prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1).

In many circumstances, an immediate transfer to prerelease custody without regard to the appropriate time and place might not be in the best interest of the prisoner and his or her future success, or the safety of the community. That is a concern expressed by the Warden in this case. For that reason, Hutson's transfer date has been aligned with her (presumed) successful completion of the FIT program to maximize her chances of success.

Hutson asserts the BOP has provided "shifting and inconsistent justifications" for delaying her transfer to prerelease custody. ECF No. 32 at 1. She notes the Warden previously had not identified her purported need to complete the FIT program as a reason for the timing of her prerelease placement. *Id.* at 1-2; ECF No. 33. Irrespective of what the Court's decision might be in this situation, Hutson's history and characteristics, in this case substance abuse, are a factor the BOP is to

consider in making its placement decisions. And, under these circumstances, the Court may not second-guess the BOP's assessment of the importance of the FIT program and its decision to delay Hutson's transfer until she successfully completes it. She has no liberty interest in placement in either an RRC or home confinement, and she has not shown that the BOP abused its discretion in choosing the date of her transfer to prerelease custody.

Accordingly, it is respectfully RECOMMENDED:

1. The petition under 28 U.S.C. § 2241, ECF No. 6, be **DENIED.**

2. The clerk be directed to close the case file.

DONE on June 27, 2025.

s/ *Midori A. Lowry*
Midori A. Lowry
United States Magistrate Judge

## NOTICE TO THE PARTIES

The case was referred to a magistrate judge for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.